# In the United States Court of Federal Claims

Case No. 09-121L
FOR PUBLICATION
Filed: June 22, 2012

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                    *
LARRY J. RHUTASEL, TRUSTEE          *
OF THE MARJORIE E. RHUTASEL         *
REVOCABLE TRUST AND THE             *
LARRY J. RHUTASEL                   *
DELCALARTION TRUST, et al..,        *
                                    *
              Plaintiffs,           *    Rails to Trails; Scope of Easement; Railroad
                                    *       Purposes; Interim Trail Use and
       v.                           *       Railbanking; Iowa Law
                                    *
THE UNITED STATES,                  *
                                    *
              Defendant.            *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Thomas S. Stewart* with whom was *Elizabeth McCulley*, Baker Sterchi Cowden & Rice Kansas City, MO, for Plaintiffs.

*Frank James Singer,* Natural Resources Section, with whom was *Ignacia S. Moreno*, Assistant Attorney General, Environment & Natural Resources Division, Department of Justice, Washington, D.C., for Defendant.

## OPINION and ORDER

**SMITH**, Senior Judge:

Pending before the Court are the Parties' Cross-Motions for Summary Judgment in a "rails-to-trails" case. Plaintiffs include eight (8) Iowa property owners[1], who collectively own eleven (11) parcels of land, and allege a Fifth Amendment taking of their properties, which were subject to a railroad right-of-way in Franklin County, Iowa. Plaintiffs argue that they are entitled

---

[1] Counsel for Plaintiffs voluntarily dismissed five (5) other Plaintiffs in this action. *See infra* Chart D.

to Summary Judgment based on two propositions. First, Plaintiffs argue that that they owned fee simple title to properties adjacent to the Railroad corridor and the Railroad merely acquired an easement. Second, Plaintiffs argue that the Railroad's easement was limited to railroad purposes and the issuance of a Notice of Interim Trail Use ("NITU") which authorizes the conversion of railroad lines to recreational trails is beyond the scope of the easement. Consequently, Plaintiffs argue they are entitled to just compensation. The Government, however, argues that some Plaintiffs do not have standing because their properties do not adjoin the Railroad corridor. Furthermore, the Government asserts that the relevant easements were not limited to railroad purposes.

After full briefing, oral argument and careful consideration, and for the reasons stated below, the Court finds that the conversion of the railroad right-of-way to a recreational trail amounted to a taking of seven (7) of the Plaintiffs' property which under the Fifth Amendment requires just compensation.

## THE TRAILS ACT

Stemming from the Interstate Commerce Act of 1887, as revised and amended by the Transportation Act of 1920 (41 Stat. 477-78), the Surface Transportation Board ("STB") is charged with regulating the construction, operation, and abandonment of railroad lines in the United States. *Chic. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 311-12 (1981); *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004). Therefore, if a railroad wishes to abandon or discontinue a railroad corridor, it is the STB that grants the railroad's approval to take such action. *Nat'l Ass'n of Reversionary Prop. Owners ("NARPO") v. STB*, 158 F.3d 135, 137 (D.C. Cir.1998). In order to preserve the unused railroad right-of-ways, The Trails Act was implemented. The Trails Act is designed to preserve unused railroad right-of-ways by converting them into recreational trails. *Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006).

In the event a railroad wishes to terminate its active rail service, a railroad may do so in one of three ways. First, a railroad may apply to discontinue service. *Preseault v. ICC*, 494 U.S. 1, 5-6 n.3 (1990). Second, a railroad may seek to abandon the right-of-way. *Hayfield N. R.R. v. Chi. & N.W. Transp. Co.*, 467 U.S. 622, 633 (1984). The third option for terminating railroad service is "railbanking," which has occurred here. While railbanking is a form of discontinuance, the right-of-way is said to be "'banked' until such time as railroad service is restored." *Caldwell v. United States*, 57 Fed. Cl. 193, 194 (2003), *aff'd* 391 F.3d 1226 (Fed. Cir. 2004). Unlike standard discontinuance, railbanking allows a third party to accept full responsibility of the railroad corridor and allows interim trail use until active rail service is restored. However, a plaintiff can assert a Fifth Amendment takings claim "when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if the trail use is outside the scope of the original railway easement." *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010).

In order for a railroad to abandon its line, the railroad must first file an Application or a Notice of Exemption. After the Application or Notice of Exemption is filed, a state, municipality,

or private group can submit a proposal for converting the railroad into a trail. *Barclay v. United States*, 443 F.3d at 1376. If the railroad and the prospective railroad operator agree to negotiate a trail use agreement, the STB "stays the abandonment process and issues a notice allowing the railroad right-of-way to be 'railbanked.'" *Caldwell,* 391 F.3d at 1229; *Citizens Against Rails-To-Trails v. STB*, 267 F.3d 1144, 1150-53 (D.C. Cir. 2001). If a railbanking and interim trail use agreement is reached, the Notice of Interim Trail Use ("NITU") automatically authorizes the trail use, and "the STB retains jurisdiction for possible future railroad use." *Caldwell,* 391 F.3d 1226, 1230. If a trail use agreement is not reached, the NITU expires 180 days after its issuance. 49 C.F.R. § 1152.29(d)(1).

## FACTUAL BACKGROUND

In the 1870s, the Central Railroad of Iowa ("Iowa Central") obtained a right-of-way from Plaintiffs' predecessors-in-interest through a combination of fee deeds, right-of-way deeds, and condemnation of rights-of-way. Iowa Central used a standard form right-of-way deed. Thereafter, Union Pacific Railroad Company ("UP") became the successor-in-interest to Iowa Central.

On March 4, 2003, Union Pacific filed with the STB a petition for exemption from formal abandonment proceedings seeking to abandon the railroad line known as the Sheffield Industrial Lead. The railroad line is located between milepost 179.8 near Chapin, Iowa to milepost 173.9 near Sheffield, Iowa, a distance of 5.9 miles. After the proposed abandonment, 1.8 miles of the line were re-classified. As a result, the trail use agreement only applies to 4.1 miles.

On June 9, 2003, the Iowa Trails Council filed a Request for Issuance of a Public Use Condition and NITU. Shortly thereafter, UP began negotiations with the Iowa Trails Council concerning the acquisition of the rail line. In late 2006, the parties reached a Trail Use Agreement, which led to the sale of the 4.1 miles of the railroad corridor. UP ultimately relinquished all interest in the railroad corridor and transferred its interest in the right-of-way to the Iowa Natural Heritage Foundation for the use as a public recreational trail. The 1.8 miles of the re-classified portion of the rail line is currently being used as an industrial track for the benefit of a grain elevator.

## THE PARTIES, PROPERTIES, STIPULATIONS AND DISPUTE

     A.    The parties stipulate that for the following parcels, the Plaintiff owned the property on September 26, 2003, the date of the NITU, as well as the original source conveyance instrument whereby the railroad acquired an easement.  Defendant, however, disputes that the property is adjacent to the former railroad corridor.

| Claim No. | Plaintiff's Name | Plaintiff's Parcel No. | Source Conveyance Parties Stipulate Applies |
| --- | --- | --- | --- |
| 6 | Michael G. and Susan M. Harris | 0309128002 | Prentice Condemnation, Book M, Page 189 |
| 12.A | Larry and Nancy Adams | 0328352008 | Beed Easement Deed Book, Book J, Page 533 (UP No. 88) |
| 12.B | Larry and Nancy Adams | 0328352009 | Beed Easement Deed Book, Book J, Page 533 (UP No. 88) |
| 13.A | Marjorie E. Rhutasel Revocable Trust & Larry J. Rhutasel Declaration Trust | 0333104001 | Bowers Condemnation, Book , Page 626, (UP No. 87) |

B.    The parties agree that for the following parcels, the original source conveyance was an easement by deed and that the Plaintiff owned the land adjacent to the former railroad corridor on the date of the NITU, but dispute the scope of the easement.

| Claim No. | Plaintiff's Name | Plaintiff's Parcel No. | Source Conveyance Parties Stipulate Applies |
|---|---|---|---|
| 9.A | W. Paul and Evelyn Bowers | 0316300005 | Bobst Easement Deed, Book J, Page 623 (UP No. 84) Bobst Condemnation (UP No. 220) |
| 9.B | W. Paul and Evelyn Bowers | 0316300006 | Bobst Easement Deed, Book J, Page 623 (UP No. 84) Bobst Condemnation (UP No. 220) |
| 10 | David A. Niehouse | 0316300007 | Bobst Easement Deed, Book J, Page 623 (UP No. 84) Bobst Condemnation (UP No. 220) – |

C. The parties stipulate that the Plaintiff owned the following properties on the day of the NITU, that the property is adjacent to the rail corridor, and that the railroad originally obtained an easement by condemnation. As such, the Defendant does not dispute liability for a taking, however, the parties dispute the property interest taken.

| Claim No. | Plaintiff's Name | Plaintiff's Parcel No. | Source Conveyance |
|---|---|---|---|
| 5 | William A. Lahner | 0309133001 | Prentice Condemnation, Book M, Page 189 |
| 7 | Kirby L. Koch | 0309128002 | Prentice Condemnation, Book M, Page 189 |
| 8 | Rich and Cheryl R. Larson | 0309133010 | Prentice Condemnation, Book M, Page 189 |
| 13.B | Marjorie E. Rhutasel Revocable Trust & Larry J. Rhutasel Declaration Trust | 0333151001 | Bowers Condemnation, Book , Page 626, (UP No. 87) |

D. The chart below depicts the parcels the Plaintiffs agree to dismiss.

| Claim No. | Plaintiff's Name |
|---|---|
| 1. A | Michael Bixby |
| 1. B | Michael Bixby |
| 1. C | Michael Bixby |
| 2. A | Nuehrings Lawn and Tree Service |
| 2. B | Nuehrings Lawn and Tree Service |
| 3. A | Gerald T. and Eileen M. Lutcavish |
| 3. B | Gerald T. and Eileen M. Lutcavish |
| 4. A | Steven T. Hirsch and Karen Rooney |
| 4. B | Steven T. Hirsch and Karen Rooney |
| 11. A | Kathy A. Bobst |
| 11. B | Kathy A. Bobst |
| 11. C | Kathy A. Bobst |

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1). When considering a motion for summary judgment, the court's role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Id.* at 248.

The moving party bears the initial burden of establishing the absence of any material fact, and any doubt over factual issues will be resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Once this burden is met, the burden shifts to the non-movant to point to sufficient evidence to show a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor. *Anderson*, 477 U.S. at 256. When the parties have cross-moved for summary judgment, the court reviews the motions under the same standards. *First Annapolis Bancorp., Inc. v. United States,* 75 Fed. Cl. 263, 275 (2007). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors*, *Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "Rather, the court must evaluate each party's motion on its own merits, draw[ing] all reasonable inferences against the party whose motion is under consideration." *Id.*

## DISCUSSION

Rails-to-trails cases, as they are commonly known, are analyzed according to the analytical framework established by the Federal Circuit in *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*"). Therefore, in order to determine whether Plaintiffs have a valid Fifth Amendment takings claim, the Court must determine: 1) who owns the strips of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate, and 2) if the Railroad acquired only an easement, whether the terms of the easement were limited to the use of railroad activities or included future uses as public recreational trails. *Id.*

Furthermore, in a rails-to-trails case, the court must analyze a claimant's property interest under the applicable state law. *See Preseault v. I.C.C.*, 494 U.S. 1, 16 ("*Preseault I*"). In this case, the property is located in Iowa. As a result, the construction of deeds and the scope of the easements will be analyzed under Iowa state law.

The Government raises several issues in this case. The Government avers that some of the Plaintiffs' properties are not adjacent to the former railroad corridor, that there is no property interest, and it disputes the scope of the easements. The Court will address each issue in turn.

A. **Ownership Interest**

The first question to be answered in a takings case is whether each named Plaintiff owned the property on the date of the taking. Consequently, the Court must determine whether or not a category of Plaintiffs can or cannot show that their properties adjoin the rail corridor. The Government first argues that three Plaintiffs, collectively owning four parcels of land, lack standing because either the parcels of land do not adjoin the rail line or because those Plaintiffs have failed to proffer sufficient evidence establishing that the property is adjacent to the rail line.[2] Specifically, the Government argues that the properties of Michael and Susan Harris, Larry and Nancy Adams, and Marjorie Rhutasel Revocable Trust/Larry J. Rhutasel's Declaration Trust are not adjacent to the rail line and, and as such, that these individuals lack standing to pursue their claims. *See supra* Chart A. The Court must, therefore, determine whether these three Plaintiffs' property adjoin the railroad line.

Under Iowa law, once it is established that the railroad holds an easement, if there are fee landowners on both sides of the right-of-way, each owns to the centerline of the railroad right-of-way under Iowa law. *Chadek v. Alberhasky*, 111 N.W.2d 297 (Iowa 1961).

1. **Michael and Susan Harris**

Michael and Susan Harris own a lot that is separated from the rail line by a strip of land. The Government argues that the deeds do not indicate that Plaintiffs were conveyed title to the street. Accordingly, the Government argues that Michael and Susan Harris lack standing and that their claim must be dismissed because their property does not adjoin the rail corridor. Michael and Susan Harris, in turn, argue that they own the vacated street and, therefore, have standing to sue.

The evidence from the deeds supplied by Franklin County Title Company provides information demonstrating that the strip of land was originally dedicated as a public street but never used, and then was quit claimed to the adjacent landowner (George Rust) in 1946. As Michael and Susan Harris are the successor in title and interest in the Rust land, the Harris' owns the formerly Rust strip as part of their land and thus their parcel is adjacent to the railroad corridor. The Harris' therefore have standing to pursue a takings claim.

2. **Marjorie Rhutasel Revocable Trust and Larry J. Rhutasel Declaration Trust**

The Government argues that Plaintiff Marjorie Rhutasel Revocable Trust and Larry J. Rhutasel Declaration Trust ("Rhutasel") fails to show that the exclusion of the town plat of Chapin, Iowa, from an assessor parcel report, does not interfere with the parcel's adjacency to the rail corridor.

The Plaintiffs, however, argue that Rhutasel's deed clearly adjoins the railroad corridor, per its ownership deed. Moreover, Plaintiffs argue that the Government's objection based on a subdivision map or a legal description is a non-legal or binding parcel report used for tax purposes, and that consequently the Government's argument is meritless.

---

[2] All other Plaintiffs have been stipulated as owning property adjacent to the rail line. *See* Charts B & C.

The Court finds that Plaintiffs have met their burden of establishing that they owned land, on the date of the NITU, adjacent to the Rail Line. Specifically, Plaintiffs provided a copy of the deed whereby Rhutasel purchased the parcel with a legal description, which is evidence that the parcel is adjacent to the railroad corridor. Plaintiffs also provided the original railroad condemnation, as well as provided a parcel map showing the location of the parcel adjacent to the railroad corridor.

### 3. Larry and Nancy Adams

The Government argues that it is entitled to Summary Judgment with regard to Plaintiffs Larry and Nancy Adams, who currently own two parcels of land. First, the Government alleges that Plaintiffs failed to provide it with a certain subdivision map. In particular, the Government argues that while the deed for one parcel of land describes land adjoining the rail line, the associated Assessor Parcel report does not. In addition, the Government argues that the report describes this parcel of land as Lot A to Zimmerman's Addition to Chapin. Consequently, it is argued that Plaintiffs have not produced a legal description and subdivision map for Zimmerman's Addition.

As to another parcel of land owned by the Larry and Nancy Adams, the Government agrees that the ownership deed and the Assessor parcel report describe Zimmerman's Addition. Even so, the Government argues that Larry and Nancy Adams have failed to show that Zimmerman's Addition to Chapin, Iowa adjoins the Rail Line.

Furthermore, the Government argues that the claims of Larry and Nancy Adams are invalid because UP owned segments of the rail corridor in fee; therefore, Plaintiffs fail to establish their property was taken. The Government contends that the granting clauses in the deed relevant to the claims of Larry and Nancy Adams provide for a fee simple conveyance. Specifically, the deed states: "[Grantors] . . . do hereby SELL AND CONVEY unto Central Rail Road Company of Iowa the following described premises, situated in Franklin County, and State of Iowa to-wit: [legal description]." Ex. 12.

The Government provides two arguments to establish UP held a fee interest. First, citing to *Lowers v. United States*, 663 N.W.2d 408, 411 (Iowa 2003), the Government argues that the deed conveyed land and did not make some reference to a right-of-way. Furthermore, the Government notes that although Larry and Nancy Adams' deed contained a reverter clause, Plaintiffs have failed to show that their predecessors-in-interest recorded any verifications of reversionary rights. *See Id.* at 412 (citing and discussing Iowa Code § 614.24).

The Court finds that Plaintiffs Larry and Nancy Adams have established that their parcels of land are adjacent to the former corridor based on their deeds, parcel maps, and other documentation. Nevertheless, the Court agrees with the Government that Plaintiffs Larry and Nancy Adams have failed to establish they have standing to pursue a taking claim. Particularly, as held in the *Lowers* decision, Plaintiffs failure to file the necessary verified claims under section 614.24 bars Plaintiffs' assertion that their reversionary interests were taken. *Id.* Given the fact the Iowa legislature enacted a stale-uses statute, Plaintiffs must proffer evidence that their predecessors-in-interest recorded a verified claim. Plaintiffs have failed to bring forth such evidence, therefore any determinable fee conveyances to Union Pacific's predecessors-in-interest are conveyances in fee simple absolute. The Court thereby dismisses the claims of Larry and

Nancy Adams.

### B. Scope

The second issue to be resolved is whether the easements granted to the Railroad were "limited to use for railroad purposes." *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996). The parties contest the scope of the easements granted to the railroad by Plaintiffs W. Paul and Evelyn Bowers and David Niehouse. *See supra* Chart B.

Plaintiffs argue that the Railroad's easement was limited to use for railroad purposes and that the issuance of the NITU, authorizing the conversion of the railroad right-of-way to a public recreational trail, is beyond the scope of the easement. Plaintiffs assert that Iowa law establishes that the conveyances to the Railroad, whether by condemnation or right-of-way deed, were limited to easements for railroad purposes. *See McKinley v. Waterloo Railroad Co.*, 368 N.W.2d 131, 134-135 (Iowa 1985) (holding that forms of transportation, such as hiking and biking, are not authorized under condemnations that created easements for railroad purposes); *see also Hawk v. Rice*, 325 N.W.2d 97, 98 (Iowa 1982) (holding that a conveyance to the railroad through a deed granting a strip of land providing a right-of-way for the purpose of railroad construction only conveys an easement for railroad purposes).

Furthermore, Plaintiffs argue that under Iowa law, a public recreational trail clearly exceeds the scope of an easement for railroad purposes, and that the holding of *McKinley*, a decision by the Supreme Court of Iowa, is applicable to their case. Specifically, the *McKinley* court held that an easement created by condemnation does not include an easement for a recreational trail. *McKinley,* 368 N.W.2d at 134. Moreover, Plaintiffs argue that there is no difference between an easement for railroad purposes through condemnation and by way of a right-of-way deed.

The Government, however, asserts three arguments to establish that trail use falls within the scope of the Iowa Central right-of-way deeds and condemned railroad easements. First, the Government argues that there is no express limitation recited in the Iowa Central deeds; consequently, they are unlimited easements which are not limited to railroad purposes only. Second, the Government avers that trail use falls within the scope of the easement because trail use does not impose a greater burden on the servient estate. Lastly, the Government argues that the holding of *McKinley* is misplaced because the Iowa Supreme Court's holding that trail use falls outside of the scope of condemned railroad easements cannot be applied to the Railroad's right-of-way deeds.

Because property rights arise under state law, Iowa law governs whether the landowners have a compensable property interest. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984); *Preseault I*, 494 U.S. at 20 (O'Connor, J., concurring). Under Iowa law, an "easement is a liberty, privilege or advantage in land without profit, existing distinct from ownership." *Hawk v. Rice*, 325 N.W. 2d 97, 98 (Iowa 1982).

The Court disagrees with the Government's argument that the right-of-way deeds are not limited to railroad purpose. Specifically, the right-of-way deeds were conveyed for railroad purposes because the pertinent language found in these deeds states that the grantor released and conveyed to the company "the right-of-way through and across my lands I own, and in any land

in which I have any interest in the county of Franklin and the state of Iowa. . ." Exhibit 15. If the grantor did not limit the deed to railroad purposes, then he or she would be allowing *any* kind of public use over its land. The grantor's intent controls, under basic property law; therefore, the right-of-way deeds were limited to railroad purposes.

Even more so, in *Preseault II*, the Federal Circuit found that the terms of the easements at issue did not contemplate the use of land as public trails. The *Preseault II* court explained:

> When the easements here were granted to the Preseaults' predecessory in the title at the turn of the century specifically for transportation of goods and persons via railroad, could it be said that the parties contemplated that a century later the easements would be used for recreational hiking and biking trails, or that it was necessary to so construe them in order to give the grantee railroad that for which it bargained? We think not. Although a public recreational trail could be described as a roadway for the transportations of persons, the nature of the usage is clearly different. In the one case, the grantee is a commercial enterprise using the easement in its business, the transport of goods and people for compensation. In the other, the easement belongs to the public, and is open for use for recreational purposes, which happens to involve people engaged in the exercise or recreation on foot or on bicycles. It is difficult to imagine that either party to the original transfers had anything remotely in mind that would resemble a public recreational trail.

*Preseault II*, 100 F.3d at 1542-43.

Furthermore, the Federal Circuit, in *Toews v. United States*, recognized that recreational activities are very different than railroad purposes:

> It appears beyond cavil that use of these easements for a recreational trail – for walking, hiking, biking, picnicking, Frisbee, playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway-- is not the same use made by a railroad, involving tracks, depots, and the running of trains.

376 F.3d 1371, 1376 (Fed. Cir. 2004).

Under Iowa law, the railroad acquired an easement limited to railroad purposes and a public recreational trail is not a railroad purpose. *McKinley*, 368 N.W.2d at 133-135. In summary, the Court finds that the conversion to a trail is completely unrelated to the operation of a railway; therefore, trail use falls outside of the scope of the right-of-way deeds and condemned easements.

Accordingly, Plaintiffs have established that the Railroad acquired easements limited to railroad purposes across those sections of the right-of-way. Because the easements were limited to use for railroad purposes, the issuance of the NITU exceeded the original scope of the

easement. Therefore, the Government's action constitutes a taking, which entitles the Plaintiffs to just compensation.

### C. Condemnation Easement

Plaintiffs William Lahner, Kirby Koch, Rick and Cheryl Larson, and Rhutasel collectively own four (4) parcels of property adjoining segments of the rail corridor that UP operated based on an easement obtained through condemnation. The Government concedes that it is liable for a taking where the railroad obtained its easement by condemnation because the easements were limited to railroad purposes. *See supra* Chart C. Nevertheless, the Government contests the nature of the property interest taken by operation of the Trails Act. 16 U.S.C. § 1247 (d).

The Government argues that the easement taken under the Trails Act is one for railroad purposes only, not one for recreational trail use. More specifically, the Government cites to *Moden v. United States* where the court held that plaintiffs must make a showing of causation between the government action and the alleged deprivation. *Moden v. United States*, 404 F.3d 1335, 1343 (Fed. Cir. 2005). The Government argues that the government action in this case involved the STB's issuance of the NITU. Simply, because that action did not mandate trail use, but merely preserved the railroad easement by preempting abandonment of the rail corridor, liability arose from taking an easement for railroad purposes.

Because the Trails Act assigns to the interim user the obligation "to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use," the Government argues that it is the interim user, and not the United States, who assumes responsibility for any legal liability arising from the specific interim use employed. Relying on Federal Circuit decisions, the Government notes that the STB issues its NITU before an interim use agreement is reached. Because no specific interim use was finalized at the time the NITU was issued, the Government argues that there was only the possibility of a future agreement that would involve interim trail use. Accordingly, the Government insists that it can only be liable for a taking of an easement for railroad purposes.

Lastly, the Government argues that that neither the Trails Act nor the NITU issued, authorized any specific interim use, including trail use. Simply, the Government argues that Plaintiffs cannot present evidence that the Government was involved in creating the public trail because there was no coordination between the STB and either Union Pacific or the trail council. The Government's argument is like that of an individual accused of shooting a person. "I only fired the gun. The bullet could have gone anywhere. I'm only guilty of firing the gun, not shooting anyone!"

The, Plaintiffs contend that the Government has mischaracterized what was taken. Specifically, Plaintiffs argue that under Trails Act jurisprudence, it is the landowner's property interest that was taken. In particular, the Plaintiffs assert that the issuance of the NITU blocked and destroyed Plaintiffs' right to "unencumbered" possession of their property.

In the Iowa Supreme Court case of *Hastings v. Burlington & M.R.R. Co.*, the court held that railroads acquire nothing more than an easement by the condemnation and the landowners

hold fee title. 38 Iowa 316, 318-19 (1874). This principle was affirmed in *McKinley v. Waterloo Railroad Co.*, where the court noted that "[c]ase law is clear that condemnation of land for railroad right of way creates an easement and once the easement is abandoned the land reverts to the then owner of the servient estate, subject to statutory provisions." 368 N.W.2d at 133-135.

Here, the Court finds that when a landowner grants a railroad purposes easement, once the Railroad's operations discontinue, the railroad purposes easement extinguishes. As a result, Plaintiffs are entitled to regain the absolute right to possess and use their land unencumbered by an easement. Consequently, as stated by the Federal Circuit, "when state-defined property rights are destroyed by the Federal Government's preemptive power . . . the owner of those rights is due just compensation." *Presault II* at 1552; *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006).

"The issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." *Caldwell*, 391 F.3d at 1233-34. Consequently, the Government's argument that that it is only liable for taking of an easement for railroad purposes is misplaced because by entering into a trail use agreement, under the Trails Act, it must agree to railbanking. By entering into a trail use agreement, the Railroad intended to discontinue its operations and relinquish all interest, liability and responsibility in the right-of-way. Therefore, arguing that the Government is only liable for the taking of an easement for railroad purposes is erroneous.

Furthermore, the Government is liable to landowners upon the issuance of the NITU because interim trail use is authorized by the Trail Act, which makes no distinction between trail use by a government entity or private entity. *See* 16 U.S.C. 1247 (a)-(d). Therefore, the Court finds that the NITU, which blocked the reversion of state law property rights, amounted to a taking of Plaintiffs' reversionary interests. Since the Government authorized use of the land for trail use, it is liable for a taking because the land is encumbered with a perpetual easement authorizing trail use.

As previously stated, although the NITU initially applied to 5.9 miles of the railroad line, the Iowa Trails Council only reached an agreement to acquire approximately 4.1 miles for trail purposes. The Court finds that the Government is liable for a permanent taking regarding the 4.1 miles of the trail and a temporary taking for the 1.8 miles, where the NITU expired and there was no trail use agreement. *See Ladd v. United States*, 630 F.3d 1015, 1023-24. Therefore, Rhutasel is entitled to just compensation for temporary takings pursuant to *Caldwell v. United States*, 391 F.3d 1229 (Fed. Cir. 2004) and *Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010). Plaintiffs William A. Lahner, Michael G. and Susan M. Harris, Kirby L. Koch, Rick E. and Cheryl R. Larson, W. Paul and Evelyn A. Bowers, and David A. Niehouse are entitled to just compensation for permanent takings.

## **CONCLUSION**

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** the Plaintiffs' Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN PART** Defendant's Cross-Motion for Summary Judgment.

In light of this opinion, the following parties are hereby **DISMISSED** from this action:

> Larry and Nancy Adams,
> Michael Bixby,
> Nuehrings Lawn and Tree Service,
> Gerald T. and Eileen M. Lutcavish,
> Steven T. Hirsch and Karen Rooney, and
> Kathy A. Bobst.

The Court further holds that Defendant took William A. Lahner, Michael G. and Susan M. Harris, Kirby L. Koch, Rick E. and Cheryl R. Larson, W. Paul and Evelyn A. Bowers, David A. Niehouse and Marjorie Rhutasel Revocable Trust and Larry J. Rhutasel Declaration Trust's property by operation of the Trails Act and, as such, are entitled to just compensation pursuant to the Fifth Amendment to the United States Constitution.

**It is so ORDERED.**

s/ Loren A. Smith
LOREN A. SMITH,
Senior Judge
